Smith, C. J.
This action was brought to recover damages for injuries suffered by tbe plaintiff while in tbe defendant’s employment as an engineer upon one of its locomotive engines.
The complaint alleges tbat tbe. defendant so negligently, carelessly and unskillfully conducted its business tbat it failed to supply tbe plaintiff with suitable and safe appliances for tbe conduct of its business and failed to keep tbe same in repair as was proper and necessary to do to secure tbe safety of said plaintiff, “ tbat said defendant was negligent and careless in tbat behalf as alleged in this, tbat while tbe said plaintiff was engaged in tbe discharge pf bis duties as engineer, the defendant failed to furnish a safe and proper locomotive engine with wbicb to do so said work, but tbat the said locomotive so furnished plaintiff was out of repair, defective, insecure and dangerous to persons upon it ... . and by reason of which defective condition *820 and lack of repair the said plaintiff while engaged in the performance of his duty was hurled violently out of the window of' the cab of the said locomotive by an explosion of gas in the firebox of said locomotive upon the ground, and received thereby severe and permanent injuries.”
The plaintiff testified on the trial that while he was at work with his engine hauling a train of freight cars, his engine “ blew out and got stopped up; she blew fire, gas and smoke out into the cab and blew me out onto the ground; ” and that thereby his leg was broken and he suffered the injuries complained of. He further testified that the netting over the smoke stack of the. engine got stopped up and that caused the engine to blow out; that, he had not examined the netting, but that he knew that it was liable to get stopped up, and that the netting was used upon the smoke-stack of ail engines to prevent fire and sparks from escaping, and burning property along the line of the railroad. He did not testify to any defect in the engine or any want of repair thereof which caused the injury. After proving the nature and extent of his injuries, the plaintiff called as a witness, one, Stephens, who, at the time of the accident, was employed by defendant as an engineer upon one of its locomotive engines, and who, having testified that he was familiar with the kind of coal in use by defendant at the time in question, was asked by plaintiff’s counsel what kind of coal it was. The defendant’s counsel objected to the question as irrelevant and immaterial, and that the complaint contained no allegation that the fuel furnished for use by plaintiff on his engine was improper, or of a defective quality. The objections were overruled, "and the Avitness was allowed to testify to the quality and kind of coal used on plaintiff’s engine. He was asked by plaintiff’s counsel how the coal was, as to being screened or dirty, and mixed with foreign substances. Defendant’s counsel objected to the question as immaterial and irrelevant and that the complaint contained no allegation that the fuel furnished for use on plaintiff’s locomotive was improper or of defective quality. The objection Avas overruled and the witness answered that the coal was not screened ; that the netting used on the engine had the same sized meshes as the netting in general use on defendant’s locomotives; that he had had exjAerience of the danger of using that kind of netting, with that kind of coal. He further testified under similar objection by defendant’s counsel that the netting that was used on defendant’s road in connection with the kind of coal that was used was not a safe and suitable instrumentality to do business with upon the engine used by plaintiff; that if a larger netting was used with that kind of coal, there would be no difficulty and that if with the netting used on that engine a better quality of coal were used, there would be no difficulty. Several other witnesses called by the *821 plaintiff who had been employed by defendant npon its locomotive engines were allowed to testify under defendant’s objection, that the quality of the coal used on defendant’s engine was defective and bad, unsafe and unfit for use with the netting used on defendant’s engines, though they also testified that it was a standard netting in use upon all the defendant’s engines, and in those of other railroad companies, and that it was a safe and proper netting if a good quality of coal was used upon the engine. Nor was any testimony given on the trial that would warrant the conclusion that there was any defect in the netting of plaintiff’s engine if the coal furnished him for use thereon had been of good quality and fit for such use.
It is entirely clear to my mind that the court erred in permitIng the plaintiff to prove that the coal furnished for use upon liis engine was of ' bad quality and unsafe and unfit for such use. As we have seen the complaint contained no allegation touching the kind or quality of fuel furnished plaintiff. On the contrary the complaint alleges that the engine furnished plaintiff was out of repair, defective, insecure, and dangerous by reason of which the plaintiff suffered the injuries complained of. On the trial the plaintiff attempted to prove that the netting upon his engine was defective, insecure and dangerous. He could only prove that when coal not screened, dirty and of a kin d and quality unfit for use was employed, the netting was unsafe and defective, but his own witnesses testified that the netting was safe and proper for use with a good quality of coal. When, therefore, the court allowed the plaintiff to abandon the charge in the complaint, that the engine was defective and unsafe, and to prove instead that the fuel used on the engine was of a bad quality, that it could not be used with safety upon an engine properly constructed and in good condition, he compelled the defendant to meet an issue not made by the pleadings, and which it did not come into court to try; and the jury were allowed by the admission of this improper evidence, to find a verdict for the plaintiff, because the fuel furnished him was not of good quality: but was unfit and unsafe for use upon .his engine.
If the complaint had not specified in what particular the plaintiff was guilty of negligence, or failure to do its duty towards the plaintiff, it would have been defective and the plaintiff could have been compelled to state in his complaint specifically, the negligence or neglect of duty which caused the injury for which he sued. And when stating the facts requisite to make his complaint sufficient in this respect, he was bound to rstate them truly, so that the defendant might know with what fault or wrong he was charged, and come to the trial prepared to meet the charge. The very object of written pleadings is to frame the issues so that the parties may know what questions *822 are to be tried and make preparation therefor and this purpose is frustrated and manifest injustice is done if, on the trial, the party is allowed to abandon the issues deliberately framed, and substitute other and different ones. The defendant no doubt was bound to furnish the plaintiff a safe and proper kind of coal to use upon his engine, and had the complaint contained proper allegations on that subject, either originally or by proper amendments, a verdict based upon those allegations and suitable proofs supporting them would not be disturbed.
I have not considered other questions made by defendant in this case, because the error of the court in permitting evidence to be given to support an issue first raised on the trial, renders it necessary to grant a new trial upon which, with amended pleadings, or otherwise, those questions may not arise.
The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.